**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 8, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

In re: C.W. MINING COMPANY,
d/b/a Co-Op Mining Company,

     Debtor.

-----------------------

STANDARD INDUSTRIES, INC.;
C.O.P COAL DEVELOPMENT
COMPANY,

     Appellants,

v.

AQUILA, INC.; KENNETH A.
RUSHTON, Trustee; C.W. MINING
COMPANY,

     Appellees.

No. 10-4028

---

**APPEAL FROM THE UNITED STATES BANKRUPTCY**
**APPELLATE PANEL**
**(BAP No. 09-014-UT)**

---

Kim R. Wilson, (David L. Pinkston and P. Matthew Cox of Snow, Christensen &
Martineau, with her on the briefs), Salt Lake City, Utah, for Appellants.

Brent D. Wride and Michael N. Zundel, (and Steven W. Call and Elaine A.
Monson of Ray, Quinney & Nebeker, P.C., on the brief), Salt Lake City, Utah, for
Appellee.

---

Before **KELLY**, **EBEL**, and **HOLMES**, Circuit Judges.

---

**KELLY**, Circuit Judge.

---

Appellants Standard Industries, Inc. ("Standard") and C.O.P Coal Development Company ("COP") appeal from an order of the Bankruptcy Appellate Panel ("BAP") affirming a contempt order of the bankruptcy court. The bankruptcy court held Standard and COP in civil contempt for intentionally violating an automatic stay imposed by 11 U.S.C. § 362(a). This court has jurisdiction pursuant to 28 U.S.C. § 158(d)(1), and we affirm.

## Background

The operative facts are not disputed. Appellants Standard and COP and appellee Aquila, Inc. ("Aquila") are creditors of debtor C.W.M. Mining Company ("CWM"). CWM produced coal and leased a mine in Utah from COP. CWM made royalty payments to COP and became delinquent on those payments in 2007. Standard was the exclusive broker for coal mined by CWM and alleges that CWM owes it over $5 million in payments pursuant to an agency agreement. Aquila is an electric utility company that contracted to buy coal from CWM. In October 2007, Aquila obtained a judgment for nearly $25 million against CWM for breach of contract.

On January 8, 2008, Aquila filed an involuntary bankruptcy petition against CWM pursuant to 11 U.S.C. § 303(b).  See 1 Aplt. App. at 113-16.  On June 25, 2008, Aquila filed a civil contempt motion against Standard and COP, alleging violations of the automatic stay imposed by 11 U.S.C. § 362(a).  See id. at 117-20.  Aquila alleged that COP violated the automatic stay by attempting to terminate its coal operating agreement with CWM, attempting to collect pre-petition royalty payments from CWM, and threatening to evict CWM from its mine.  See id. at 118.  In addition, Aquila alleged that Standard violated the automatic stay by, among other things, suing UtahAmerican Energy, Inc. ("UEI"), a purchaser of CWM's coal, to require UEI to pay Standard funds that had been garnished by Aquila.  See id. at 134.

Aquila served its contempt motion by first class mail on Mark Hansen, attorney for Standard, and Carl Kingston, attorney for COP, on June 25, 2008.  See 2 Aplt. App. at 502-03.  On June 30, 2008, Aquila filed a notice of hearing and mailed copies to Mr. Kingston and Mr. Hansen via first class mail.  See id. at 505-07.  The notice stated that a hearing on the contempt motion was scheduled for August 1, 2008 and that objections must be filed and served by no later than July 18, 2008.  See id. at 506.  In addition, it expressly stated that "[i]f no timely objection is made, the Court may grant the relief requested without a hearing, pursuant to Rules 2002-1(b) and 9013-1(c)."  Id.

On July 11, 2008, Standard filed a motion to dismiss the involuntary

bankruptcy petition against CWM. See id. at 509-10. In addition, Mr. Hansen, representing both Standard and COP, filed a motion to enlarge time to respond to the contempt motion, asking the bankruptcy court to move the deadline to ten days after it ruled on the motion to dismiss as the motion to dismiss, if granted, would moot the contempt motion. See id. at 589-90.

On July 12, 2008, Mr. Hansen began a family vacation and put a hold on his mail delivery. See 3 Aplt. App. at 825. On July 14, 2008, without specifically addressing the motion to enlarge time, the bankruptcy court entered a scheduling order confirming that the hearing on the contempt motion would be held on August 1, 2008 and that Standard and COP had until July 18, 2008 to file a response or objection. See 2 Aplt. App. at 591-93. The scheduling order expressly stated that "[f]ailure of any opposing parties to comply will preclude their participation in the hearing." Id. at 592.

Standard and COP did not file a response in opposition to the contempt motion by the July 18 deadline. On July 23, Aquila filed a certificate of non-response urging the bankruptcy court to grant the relief requested. See id. at 598-601. On the same day, the bankruptcy court entered its order ("contempt order") holding Standard and COP in civil contempt for violations of the automatic stay and voiding all actions taken by Standard and COP in violation thereof. See id. at 609-15. The contempt order directed Standard to return to the bankruptcy estate all money, property, and assets in which CWM had an interest that Standard

- 4 -

received on or after the petition date. See id. at 611. It also ordered Standard to dismiss its state lawsuit against UEI. See id. at 612. In addition, the bankruptcy court declared any post-petition attempts by COP to terminate its coal operating agreement with CWM null and void. See id. Finally, as a sanction for violating the automatic stay, the court ordered Standard and COP to pay Aquila's attorneys' fees and costs incurred in prosecuting the contempt motion. See id. By the time Mr. Hansen returned from his vacation on July 23, 2008, the time to respond to the contempt motion (July 18) had passed, and the contempt order had been entered (July 23). See 3 Aplt. App. at 826.

On July 28, 2008, Standard and COP filed a motion arguing that they were entitled to relief pursuant to Fed. R. Civ. P. 60(b)(1), (3), and (5); that the contempt order violated their due process rights; and that Aquila was required to seek relief by adversary proceeding. See 2 Aplt. App. at 669-82. The bankruptcy court held a hearing on the Rule 60(b) motion on November 3, 2008, and on November 24, 2008, it entered an order denying the motion as to Rules 60(b)(1) and (3), but setting an evidentiary hearing on the relief requested under Rule 60(b)(5) for December 12, 2008. See 3 Aplt. App. at 933-35. On April 15, 2009, Standard and COP abandoned their Rule 60(b)(5) argument and filed a notice of appeal concerning the contempt order and the Rule 60(b) order. See id. at 937-41. The BAP affirmed the bankruptcy court's contempt order and Rule 60(b) order, finding that COP and Standard had been afforded due process; that

- 5 -

Aquila's claims were properly sought by motion; and that Standard and COP failed to provide an adequate record concerning their Rule 60(b)(1) and (3) arguments. See Standard Indus., Inc. v. Aquila, Inc. (In re C.W. Mining Co.), 431 B.R. 307, 2009 WL 4894278, at *4-8 (B.A.P. 10th Cir. Dec. 18, 2009).

On appeal, Standard and COP argue that: (1) the bankruptcy court's entry of the contempt order without a hearing denied them due process of law because due process requires an actual hearing; (2) when applied to a motion for civil contempt, Utah local bankruptcy rule 9013-1(c) is unconstitutional because it allows a bankruptcy court to grant relief requested by motion without a hearing; and (3) the bankruptcy court exceeded its authority by entering the contempt order because bankruptcy courts can order only monetary damages for civil contempt and because Aquila should have sought relief by adversary proceeding, not by motion. The Rule 60(b) order is not at issue.

Discussion

Generally, when we review a BAP decision on appeal, our standard of review is de novo for legal questions and for clear error as to the bankruptcy court's factual findings. Melnor, Inc. v. Corey, 583 F.3d 1249, 1251 (10th Cir. 2009). Although the BAP is a subordinate appellate court not entitled to deference, its rulings are often persuasive. Mathai v. Warren, 512 F.3d 1241, 1248 (10th Cir. 2008).

- 6 -

A.    Due Process Rights

Standard and COP argue that the bankruptcy court's entry of the contempt order without an actual hearing denied them due process of law because due process requires an actual hearing.  See Aplt. Br. at 12-24.  This is a legal question we review de novo.  State Bank v. Gledhill (In re Gledhill), 76 F.3d 1070, 1083 (10th Cir. 1996) (citation omitted).

The Supreme Court has consistently held that due process requires notice and a meaningful opportunity to be heard.  See, e.g., LaChance v. Erickson, 522 U.S. 262, 266 (1998) ("The core of due process is the right to notice and a meaningful opportunity to be heard." (emphasis added)); Mathews v. Eldridge, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." (emphasis added) (internal quotation marks and citation omitted)); Boddie v. Connecticut, 401 U.S. 371, 378 (1971) ("[D]ue process requires, at a minimum, . . . a meaningful opportunity to be heard." (emphasis added))).

Standard and COP's argument that due process always requires an actual hearing–rather than an opportunity to be heard–must be rejected.  The Supreme Court expressly stated in Boddie that "[d]ue process does not, of course, require that the defendant in every civil case actually have a hearing on the merits." Boddie, 401 U.S. at 378.  The Court added: "A State, can, for example, enter a default judgment against a defendant who, after adequate notice, fails to make a

- 7 -

timely appearance, or who, without justifiable excuse, violates a procedural rule requiring the production of evidence necessary for orderly adjudication." Id. (citations omitted). This court has adhered to the principle that due process requires only an opportunity to be heard. See F.T.C. v. Kuykendall, 371 F.3d 745, 754 (10th Cir. 2004) (en banc) ("[I]n civil contempt proceedings all that is required to satisfy the Due Process Clause is that defendants be given reasonable notice and an opportunity to be heard." (emphasis added) (citing International Union, United Mine Workers of America v. Bagwell, 512 U.S. 821, 827 (1994)).

Turning to the requisites of due process, Standard and COP were given reasonable notice and a meaningful opportunity to be heard. Their attorney was served with the contempt motion and the notice of hearing. The notice expressly stated that the hearing on the motion was set for August 1, 2008 and that the objection deadline was July 18, 2008. In addition, the bankruptcy court confirmed these dates in its July 14 scheduling order. Appellants had a meaningful opportunity to respond until July 18. Instead of filing an objection to the contempt motion, however, they filed their motions to dismiss and enlarge time on July 11, 2008.

When Standard and COP failed to respond to the contempt motion by the July 18 deadline, Aquila filed a certificate of non-response, and the bankruptcy court granted relief pursuant to local rule. Specifically, Local Rule 9013-1(c) states:

> Response to Motions. A party responding to a motion must file a response within any applicable time limitation, including the time limitations of these Local Rules. A response must set forth succinctly, but without argument, the response, including objections, to the motion. <u>If an objection is not timely filed, the court may grant the relief requested without a hearing</u>. A party submitting an order where no objection has been filed to the motion must submit an application or declaration of noncompliance with the motion stating that there has been no objection filed or served on the movant.

Bankr. D. Ut. LBR 9013-1(c) (emphasis added). Given a facially plausible motion, Standard and COP were not denied due process because they were afforded adequate notice and a meaningful opportunity to be heard.

B.      Constitutionality of Local Rule 9013-1(c)

For the first time in these proceedings, Standard and COP argue before this court that Local Rule 9013-1(c) is unconstitutional because it allows a bankruptcy court to issue an order for civil contempt based solely on a motion without a hearing. <u>See</u> Aplt. Br. at 24-27. We decline to address this argument because it was not expressly raised in any prior proceeding.

As a general rule, "a federal appellate court does not consider an issue not passed upon below." <u>Singleton v. Wulff</u>, 428 U.S. 106, 120 (1976). This rule is not absolute, however. "The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases." <u>Id.</u> at 121.

This court considers issues not previously raised only in rare circumstances. We have held that "[t]he failure to raise the issue with the trial

court precludes review except for the most manifest error" and that "[e]xceptions to [the] rule are rare and generally limited to cases where the jurisdiction of a court to hear a case is questioned, sovereign immunity is raised, or when the appellate court feels it must resolve a question of law to prevent a miscarriage of justice." Hicks v. Gates Rubber Co., 928 F.2d 966, 970 (10th Cir. 1991). We do not find those narrow exceptions applicable here and therefore do not address the constitutionality of Local Rule 9013-1(c).

## C. Motion v. Adversary Pleading

Finally, Standard and COP argue that the bankruptcy court exceeded its authority (1) because a bankruptcy court can award only monetary damages when issuing an order of civil contempt; and (2) because relief should have been sought by adversary proceeding pursuant to Fed. R. Bankr. P. 7001, and not by motion. See Aplt. Br. at 27-32. These are legal issues reviewed de novo.

In Mountain America Credit Union v. Skinner (In re Skinner), we held that a bankruptcy court had the authority to enter a civil contempt order for violation of an automatic stay and affirmed the bankruptcy court's award of monetary sanctions. See 917 F.2d 444 (10th Cir. 1990). Standard and COP argue that a bankruptcy court's authority under Skinner is limited to awarding only monetary damages. See Aplt. Br. at 28-29. We reject this argument. While the damages awarded in Skinner amounted only to monetary sanctions, this court never expressly stated that the bankruptcy court's authority was limited to granting such

an award.  Because <u>Skinner</u> did not limit the power of a bankruptcy court to awarding just monetary damages in civil contempt orders, we hold that the bankruptcy court did not exceed its authority by voiding the actions taken by Standard and COP in violation of the automatic stay.

In addition, we reject Standard and COP's argument that Aquila was required to seek relief by adversary proceeding pursuant to Rule 7001.  Under Rule 7001, proceedings to recover money or property; to determine the validity, priority, or extent of a lien or other interest in property; to obtain an injunction or other equitable relief; or to obtain a declaratory judgment relating to any of the foregoing are adversary proceedings.  Fed. R. Bankr. P. 7001(1), (2), (7), (9).  In <u>In re Gledhill</u>, we held that when the plain language of the applicable federal bankruptcy rule permits a party to seek relief by motion, a party need not seek relief by adversary proceeding under Rule 7001.  <u>See</u> 76 at, 1076-1078 (holding that "[t]he plain language of Rules 7001(7), 9024, and 60(b) establishes that a party may seek Rule 60(b) relief from an order granting relief from stay by motion as a contested matter without filing an adversary proceeding").  Similarly, the plain language of Rules 9020 and 9014(a) permit a party to seek an order of civil contempt by motion, and thus, Aquila was not required to seek relief by adversary proceeding under Rule 7001.

Rule 9020 provides that "Rule 9014 governs a motion for an order of contempt made by the United States trustee or a party in interest."  Fed. R. Bankr.

P. 9020.  Rule 9014(a) provides, in relevant part, that "[i]n a contested matter not otherwise governed by these rules, relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought."  Fed. R. Bankr. P. 9014(a).  The BAP held that Rules 9014 and 9020 permitted Aquila to commence its contempt proceedings by motion.  See In re C.W. Mining Co., 2009 WL 4894278, at *4-5.  We agree.

Standard and COP argue that Aquila was required to seek relief under Rule 7001 because the contempt order granted injunctive and equitable relief, made a determination of property interests, and awarded declaratory relief.  See Aplt. Br. at 31.  We do not read the order so broadly, nor would a reasonable person.  The bankruptcy court merely voided the violations of the automatic stay and awarded attorneys' fees for the cost of pursuing the contempt motion.  This relief returned the parties to the status quo before Standard and COP violated the automatic stay. It did not, as Standard and COP contend, award injunctive, equitable, or declaratory relief or make any determination of property interests.

AFFIRMED.