FILED
United States Court of Appeals
Tenth Circuit

October 9, 2013

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

In re:  MIRIAM ONYEABOR,

       Debtor.

------------------------------

MIRIAM ONYEABOR,

       Appellant,

v.

CENTENNIAL POINTE OWNERS
ASSOCIATION; LEBR ASSOCIATES,
LLC,

       Appellees.

No. 13-4037
(BAP No. 11-117-UT)
(BAP)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, Chief Judge, **ANDERSON**, Circuit Judge, and **BRORBY**, Senior
Circuit Judge.

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Miriam Onyeabor, appearing pro se, appeals from a decision of the Bankruptcy Appellate Panel (BAP) affirming the bankruptcy court's orders converting her Chapter 13 case to a Chapter 7 case and denying reconsideration of the conversion order. We have jurisdiction under 28 U.S.C. § 158(d)(1), and we affirm.

## I.    BACKGROUND

Ms. Onyeabor filed a voluntary Chapter 13 petition on April 5, 2011, and a Chapter 13 plan on April 21, 2011. The plan proposed sixty monthly payments of $445 to the Chapter 13 Trustee and an unspecified monthly payment directly to several creditors (who are not parties to this appeal) holding mortgages against Ms. Onyeabor's commercial and residential properties.

The appellees, Centennial Pointe Property Owners Association (the POA) and LEBR Associates, LLC (LEBR), jointly filed a proof of claim asserting secured claims in the amount of $385,097.07 (POC #7). That sum included $124,351.23 attributable to two Utah state-court judgments against Ms. Onyeabor for unpaid POA assessments, interest, and attorney's fees (the Judgment Lien).[1] That amount was secured by liens against commercial properties Ms. Onyeabor owned in the Centennial Pointe development and against her residence. The balance of POC #7 was for unpaid POA assessments post-dating the period covered by the Judgment

[1]    The judgment in the first action, affirmed on appeal, was entered on January 28, 2008, in favor of only the POA and awarded $95,213.70 plus interest, which totaled $21,221.42. The judgment in the second action, $7,916.11 in attorney's fees for pursuing a wrongful-lien action against Ms. Onyeabor, was entered in favor of the POA and LEBR on September 13, 2010.

Lien and for insurance, utilities, maintenance, repair, and collection costs accrued since July 30, 2010. This balance was secured by liens against Ms. Onyeabor's Centennial Pointe properties.

The POA and LEBR also filed a joint objection to confirmation of Ms. Onyeabor's plan, asserting that it was filed in bad faith because it (1) failed to accurately disclose all her assets and liabilities, (2) failed to provide for payment of their secured claim, and (3) was otherwise infeasible because Ms. Onyeabor could not make payments under the plan. Other parties also filed objections to confirmation, including the Chapter 13 Trustee and the Salt Lake County (SLC) Treasurer. The Trustee complained about missing information, procedural violations, and improper deductions. The SLC Treasurer objected on the ground that the plan failed to provide for payment of a secured claim for pre-petition property taxes in the amount of $12,875.24.

Ms. Onyeabor filed an objection to POC #7. She contested whether the claim was secured and nondischargeable, whether the POA and LEBR had standing to file it, and whether there was sufficient substantiation of the amount in excess of the Judgment Lien.

On August 12, 2011, the POA and LEBR jointly filed a motion to dismiss the Chapter 13 case or to convert it to a Chapter 7 case under 11 U.S.C. § 1307(c), arguing that Ms. Onyeabor did not file her petition or plan in good faith.

On October 6, 2011, the bankruptcy court held a hearing on the motion to dismiss or convert and on Ms. Onyeabor's objection to POC #7. Although Ms. Onyeabor was initially represented by counsel at the hearing, she discharged her attorney during the hearing and represented herself. The court rendered an oral decision that the case should be converted to Chapter 7 because Ms. Onyeabor had filed her plan in bad faith. Specifically, the court found that the plan made no provision for repayment of the POA's Judgment Lien, the SLC Treasurer's claim for unpaid pre-petition property taxes, or another creditor's claim for $23,558.76 in pre-petition property taxes it had paid on Ms. Onyeabor's behalf. The court further found that Ms. Onyeabor's income was insufficient to support her plan or even the Judgment Lien.

The court also noted that although Ms. Onyeabor's case had been pending for six months, she had not addressed the Trustee's objections or made any effort to amend the plan. Further, the court found that her bankruptcy filing was motivated by a desire to avoid paying the POA and LEBR. The court observed that there had been a long, contentious relationship between Ms. Onyeabor and the POA/LEBR that involved state-court litigation and continued with Ms. Onyeabor's steadfast insistence, up to and including the hearing on the motion to convert, that she had no legal obligation to pay ongoing POA assessments despite a contrary state-court judgment. Thus, the bankruptcy court concluded that Ms. Onyeabor failed to articulate any potentially feasible plan and granted the motion to convert. The court

- 4 -

also determined that Ms. Onyeabor's objection to POC #7 was moot in light of the conversion.

When Ms. Onyeabor, still pro se, sought reconsideration of the conversion order, the bankruptcy court held another hearing and denied the motion to reconsider. The court rejected Ms. Onyeabor's argument that the POA was not properly represented in the bankruptcy proceedings, stating that the POA was a legal entity and represented by counsel. The court also pointed out that even if LEBR was not entitled to advance claims in the bankruptcy proceeding, the POA was a judgment creditor entitled to do so with respect to at least a minimum of $94,000 of the Judgment Lien, which Ms. Onyeabor agreed was secured. The court further stated that it was not the proper place to litigate Ms. Onyeabor's contention that LEBR's principals, the "Railes," had "hijacked" the POA by directing and controlling its actions in the bankruptcy court despite the fact that LEBR had sold all of its Centennial Pointe property prior to the filing of her petition.

In a lengthy and detailed decision, the BAP affirmed the bankruptcy court's conversion order and its denial of Ms. Onyeabor's motion to reconsider the conversion order. This appeal followed.[2]

---

[2] Counsel for POA and LEBR have filed a notice of non-participation, stating that neither entity had authorized them to enter an appearance in this appeal, and that neither entity intended on retaining new counsel or filing a response brief. Counsel did, however, suggest that this appeal was moot because the Chapter 7 Trustee has sold Ms. Onyeabor's Centennial Pointe properties, and therefore the court could not grant an effective remedy to the extent Ms. Onyeabor seeks reconversion to

(continued)

## II.    DISCUSSSION

"In an appeal in a bankruptcy case, we independently review the bankruptcy court's decision, applying the same standard as the BAP or district court.  We thus review the bankruptcy court's legal determinations de novo and its factual findings for clear error."  *Miller v. Bill & Carolyn Ltd. P'Ship (In re Baldwin)*, 593 F.3d 1155, 1159 (10th Cir. 2010) (citations omitted).  "Whether a Chapter 13 plan has been proposed in good faith is a question of fact subject to the clearly erroneous standard of review."  *Robinson v. Tenantry (In re Robinson)*, 987 F.2d 665, 668 (10th Cir. 1993).  We afford Ms. Onyeabor's pro se filings a liberal construction, but we do not act as her advocate.  *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

Ms. Onyeabor's numerous appellate issues, although difficult to follow, focus on the effect of the state-court litigation; whether LEBR had standing in the bankruptcy case; whether LEBR hijacked the POA; whether her objection to POC #7 was separable from the bankruptcy court's feasibility analysis; and whether the

---

Chapter 13 for the purpose of regaining ownership and control of those properties. We question the propriety of counsel advancing legal arguments in a case in which they are not participating.  Nonetheless, we have reviewed the matter, including Ms. Onyeabor's response to the mootness argument, and we are confident that this appeal is not moot.  Even if Ms. Onyeabor could not regain ownership of the now-sold properties, her bankruptcy case involves other properties whose disposition could be affected by a reconversion to Chapter 13.

bankruptcy court violated her due process rights. We group and address those issues that are presented in a sufficiently coherent manner as follows.[3]

First, Ms. Onyeabor contends that the POA's rejection of her settlement offers while her appeal was pending in the first state-court case mooted the POA's state-court judgment under Utah R. Civ. P. 68 and Fed. R. Civ. P. 68. In essence, this argument asks us to disregard a final state-court judgment, which we may not do. *See* 28 U.S.C. § 1738 (requiring that "judicial proceedings . . . [of any State] shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State"). In any event, the Utah rule, which is the rule applicable to her state-court offers, requires a settlement offer to be made in the state court ten days before trial. Utah R. Civ. P. 68(c)(3). Ms. Onyeabor states that the first of her offers was not made until May 5, 2008, while her appeal of the judgment was pending, so her reliance on Rule 68 is misplaced.

---

[3]     Ms. Onyeabor filed a motion to submit an opening appellate brief in excess of thirty pages. This court denied the motion, informing her that her brief could exceed thirty pages provided it did not exceed 14,000 words. Her Amended Opening Brief is thirty-eight pages and contains a certification that it consists of 13,984 words, but eight pages of her statement of facts, which count toward the word limit, are set out in an addendum, which does not count toward the word limit if it contains statutes, rules, or regulations. *See* Fed. R. App. P. 32(a)(7)(B)(iii). It appears to us that the placement of eight pages of facts in the addendum is an attempt to skirt this court's order and the word limit set out in Fed. R. App. P. 32(a)(7)(B). Although Ms. Onyeabor is pro se, she is required, like any other litigant, to comply with procedural rules, *see Yang*, 525 F.3d at 927 n.1, and court orders. We warn her that future attempts to evade procedural rules and court orders may result in appropriate sanctions, including the striking of briefs or portions of briefs.

Second, Ms. Onyeabor's arguments about LEBR's standing in the bankruptcy case—including that any preclusive effect of the state-court judgments does not apply to LEBR and that the bankruptcy "case" was not ripe for review, Aplt. Br. at 19-23, 29-32—focus on irrelevant issues. The bankruptcy court's conversion order rested on Ms. Onyeabor's lack of good faith with respect to the POA's Judgment Lien, the validity of which she acknowledged at the October 6 hearing and confirmed at the reconsideration hearing; the claims for unpaid pre-petition property taxes; and the lack of any response to the Chapter 13 Trustee's objections. The bad-faith finding was not dependent on any matter solely related to LEBR or any preclusive effect of the state-court judgments.

Third, Ms. Onyeabor contends that LEBR was not authorized to file in the bankruptcy proceeding on the POA's behalf. But the evidentiary support for that contention is an email purportedly sent to Ms. Onyeabor on July 25, 2012, by another Centennial Pointe Property owner (who had at some point become the POA's president) in which the owner says "I was not involved in your dispute with the Railes and I have little knowledge about it." Aplt. BAP App. at 726.[4] There are multiple problems with reliance on this email: it post-dates the conversion order and therefore was not before the bankruptcy court when the court converted the case; it is

---

[4] The appendix Ms. Onyeabor filed with the BAP is not part of the record on appeal filed with this court. Nonetheless, we have taken judicial notice of it. *See Guttman v. Khalsa*, 669 F.3d 1101, 1127 n.5 (10th Cir. 2012) (stating that we may take judicial notice of district court filings not included in the record on appeal).

not authenticated or sworn; it is inadmissible hearsay; and it says nothing meaningful about LEBR's alleged hijacking of the POA. Further, in support of their objection to Ms. Onyeabor's motion for reconsideration, counsel for the POA and LEBR filed an affidavit discussing the history of counsel's representation of the POA since 2005, and the POA, as a creditor, unquestionably had standing to appear in the bankruptcy court to protect its portion of the Judgment Lien. *See* 11 U.S.C. § 501(a) ("A creditor . . . may file a proof of claim."). We therefore find no merit in the contention that the joint filings by the POA and LEBR were without the POA's authorization.

Fourth, Ms. Onyeabor argues that her objection to POC #7, which the bankruptcy court deemed moot by the conversion to Chapter 7, was not separable from the feasibility of her plan. She points out that she included the Judgment Lien in a schedule of unsecured non-priority claims and argues that she could not make the plan more definite until the court ruled on her objections, including whether claims were secured or unsecured and whether LEBR had standing to pursue any of its claims for continued POA assessments and other post-Judgment-Lien amounts. But her objection was, as the bankruptcy court implicitly found, immaterial to the grounds for its conversion order. Although she included the Judgment Lien in the schedule of unsecured non-priority creditors, the plan itself did not provide for paying it, and the bankruptcy court determined that there was no feasible way that the plan could propose to pay it or the pre-petition property taxes. Further, as the bankruptcy court pointed out, Ms. Onyeabor did not respond to the Chapter 13

Trustee's objections or, in the many months since objections were filed, attempt to amend her plan. Her objection to POC #7 had nothing to do with those additional bases for the bad-faith finding. Accordingly, we conclude that the objections were not material to the grounds for conversion and that the bankruptcy court correctly ruled that the conversion mooted them.

Finally, Ms. Onyeabor claims the bankruptcy court denied her due process in several ways. She first argues that during the October 6 hearing on the motion to dismiss or convert, the court deprived her of due process when it told her attorney, Lou Harris, that the court would not indulge in conferences between him and Ms. Onyeabor. She claims that after the court's statement, she "had" to fire Mr. Harris so she "could get a word in" because Mr. Harris had only taken over the case ten days before the hearing after her prior attorney had become seriously ill and was unable to continue representation. Aplt. Br. at 36. We see no due process violation. "[D]ue process requires notice and a meaningful opportunity to be heard." *Standard Indus., Inc. v. Aquila, Inc. (In re C.W. Mining Co.)*, 625 F.3d 1240, 1244 (10th Cir. 2010). At the hearing, the bankruptcy court simply stated that it would not tolerate continued attorney-client consultations. It did not require or force Ms. Onyeabor to take over her case pro se. Accordingly, we see no due process violation in the court's admonishment.

Ms. Onyeabor also claims that the bankruptcy court violated her due process rights when it rejected her request, made at the October 6 hearing, that the court give

her until November 8, 2011, to revise her plan again. In denying her request, the court noted that November 8 was the date for the confirmation hearing, "not a date to begin proposing plans." Aplt. BAP App. at 393. We see no due process violation.

Ms. Onyeabor further argues that the bankruptcy court violated her due process rights by not instructing her to file adversary proceedings. By this we take her to mean that, at a hearing on her objections to POC #7 scheduled for August 10, 2011, but continued to October 6, the bankruptcy court should have advised her that some of her objections needed to be filed in an adversary proceeding. We see no error. Ms. Onyeabor was still represented by counsel on August 10. Courts do not act as advocates for pro se parties, *Yang*, 525 F.3d at 927 n.1, let alone those represented by counsel. It therefore follows that due process does not require courts to provide legal advice to the parties or their attorneys. *See McKaskle v. Wiggins*, 465 U.S. 168, 183-84 (1984) (stating that there is no "constitutional right to receive personal instruction from the trial judge on courtroom procedure" and that "the Constitution [does not] require judges to take over chores for a *pro se* defendant that would normally be attended to by trained counsel as a matter of course").

III. CONCLUSION

The Bankruptcy Appellate Panel's judgment is affirmed.

Entered for the Court


Stephen H. Anderson
Circuit Judge